UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

——————————————————————————

EDWIN PARRA,

               Petitioner,           **DECISION AND ORDER**
                                     **No. 11-CV-6518(MAT)**

     -vs-

BRIAN FISCHER, Commissioner,

               Respondent.

——————————————————————————

## I.   Background

Pro se petitioner Edwin Parra ("Parra" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of a Tier III prison disciplinary hearing resulting from an inmate misbehavior report issued on January 24, 2009, while Parra was incarcerated at Auburn Correctional Facility.[1]

On that date, Corrections Officer Ouimette ("CO Ouimette") was performing a frisk of Petitioner's cell when he noticed a large amount of new clear packaging tape on both sides of the toilet. As

---

[1]
    Petitioner's underlying conviction was entered December 17, 1997, following his guilty plea in New York State Supreme Court (New York County) to one charge of Attempted Assault in the First Degree (N.Y. Penal Law §§ 110.00/120.10(1)). He was sentenced as a persistent violent felony offender to an indeterminate prison term sixteen years to life. On June 19, 2000, Petitioner was convicted, following a guilty plea in Franklin County Court of New York State, of one count of Conspiracy in the Fourth Degree (N.Y. Penal Law § 105.10(1)). He was sentenced, as a second felony offender, to an indeterminate prison term of two to four years. The court ordered Petitioner's sentence on the conspiracy conviction to run consecutively to his sentence on the attempted assault conviction.

CO Ouimette removed the tape, he noticed that fresh toilet paper was lodged between the toilet and the wall, and the area was covered in a layer of toothpaste and new paint. Upon removing the paper, CO Ouimette found an eight-inch plexiglass shank. Further inspection of Petitioner's cell yielded eighteen pages of what CO Ouimette believed to be gang-related material. CO Ouimette notified his supervisor, Sergeant Collins, and Petitioner was escorted to the Special Housing Unit ("SHU"). That same day, CO Ouimette filed an inmate misbehavior report, charging Petitioner with violating Department of Correctional Services Institutional Rules 113.10 (7 N.Y. Comp. R. & Regs. ("N.Y.C.R.R.") § 270.2(B)(14)(i)) (possession of a weapon) and 105.13 (7 N.Y.C.R.R. § 270.2(B)(6)(iv)) (possession of gang-related material)).

Following a hearing conducted on January 30, 2009, and February 6, 2009, the hearing officer found Petitioner not guilty of possessing gang material in violation of Prison Rule 105.13 because there was not substantial evidence to support the charge. The hearing officer's independent investigation revealed that the materials were simply historical information. Accordingly, the hearing officer determined that the papers would be returned to Parra. However, the hearing officer did find Parra guilty of possessing a weapon in violation of Prison Rule 113.10. The penalty imposed was ninety days in SHU with loss of packages, commissary

and phone privileges. The hearing officer further recommended a six-month loss of good time credits.[2]

Petitioner filed a pro se administrative appeal, which was rejected on March 10, 2009. Petitioner then instituted a pro se proceeding under Article 78 of New York Civil Practice Law and Rules in New York State Supreme Court (Albany County). This matter was transferred to the Appellate Division, Third Department, of New York State Supreme Court, because Petitioner raised an issue of whether "substantial evidence" supported the disciplinary ruling.[3]

By decision dated August 5, 2010, the Third Department dismissed the petition, finding that "inasmuch as the petition does raise an issue of substantial evidence, the proceeding was properly transferred to this Court for review." Parra v. Fischer, 76 A.D.3d 724, 725 (3d Dept. 2010) (citations omitted). The Third Department rejected Petitioner's contentions of bias on the part of the

---

[2]

A New York State inmate serving an indeterminate sentence with a maximum term *other than life imprisonment* may receive an allowance for good behavior in prison not to exceed one-third of the maximum term. N.Y. CORR. LAW § 803(1) (emphasis supplied). Once an inmate possesses good time credits equal to the remainder of his sentence, he is conditionally released and placed under parole supervision until the expiration of his sentence. N.Y. PENAL LAW § 70.40(1)(b).

[3]

State prisoners in New York challenging prison disciplinary determinations must file a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R.") in the Supreme Court of the county in which they are incarcerated. See Grant v. Senkowski, 95 N.Y.2d 605, 607 (2001). Article 78 petitions asserting that an administrative finding in New York was not supported by substantial evidence must be transferred directly to the Appellate Division for review. See N.Y. CIV. P. LAW & R. § 7804(g).

hearing officer and held that "the misbehavior report, related documentation and testimony adduced at the hearing provide[d] substantial evidence supporting the determination finding petitioner guilty of possessing a weapon." Id. (citations omitted). With regard to Petitioner's denial that the weapon belonged to him and his argument that the misbehavior report was fabricated, the Third Department concluded that such contentions merely "presented a credibility issue for the Hearing Officer to resolve." Id. (citation omitted). On November 30, 2010, the New York Court of Appeals denied Petitioner's leave application. Parra v. Fischer, 15 N.Y.3d 714 (2010).

On October 19, 2011, Parra filed the instant § 2254 habeas petition, asserting "Violation of Due Process" as ground one. See Petition ("Pet.") at 7A (Dkt. #1). In particular, he contends that the hearing officer's determination violated his due process rights because it was based on false testimony ("Claim 1(a)"); he was denied the right to call witnesses ("Claim 1(b)"); and the clerk of the New York Court of Appeals failed to convert Petitioner's leave application so that it would be properly considered by that court ("Claim 1(c)"). As ground two, Petitioner contends that  the hearing officer did not follow the applicable prison rules and regulations inasmuch as the officers with knowledge did not sign all of the incident reports ("Claim 2(a)"). Pet. at 7A-7B. Finally, as ground three, Petitioner asserts that the Albany County Supreme

Court erroneously transferred the proceeding to the Appellate Division ("Claim 3(a)").[4] Id. at 7B. Petitioner asks that his petition "be accepted" by the Court, "together with whatever else this Court may deem just and proper." Petitioner's Traverse at 16 (Dkt. #10).

Respondent answered the petition, asserting that Petitioner had failed to exhaust his remedies, that the petition is untimely, that the claims are not cognizable on habeas review, and that, in any event, the claims lack merit. See Dkt. #8 (Respondent's Memorandum of Law). Petitioner submitted a Traverse (Dkt. #10) with Exhibits (Dkt. #11) but did not address the untimeliness argument.

For the reasons that follow, the petition is dismissed.

## II.  Discussion

### A.  The Court need not address the exhaustion and untimeliness defenses.

"[I]n habeas corpus cases, 'potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.'" Boddie v. New York State Division of Parole, 288 F. Supp.2d 431, 439 (S.D.N.Y. 2003) (quoting Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003)). Here, Parra's claims may be readily denied on substantive grounds.  Therefore, the Court need not resolve either the

---

[4]

The Court utilizes Petitioner's numbering of claims and subclaims.

exhaustion issue or the untimeliness issue, which, as Respondent's attorney thoroughly explains in her brief, presents a novel question of law. <u>See</u> Respondent's Memorandum of Law ("Resp't Mem.") at 15-16 & n.3 (collecting conflicting authorities) (Dkt. #8).

**B.   The recommended loss of good time credits cannot be challenged in this 28 U.S.C. § 2254 proceeding because Petitioner is serving a potential life sentence and is ineligible for good time credit.**

To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Challenges to the validity of prison administrative actions that affect the fact or length of the prisoner's confinement are properly brought under 28 U.S.C. § 2254. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973) (holding that state prisoners who had been deprived of good-time credits as a result of internal disciplinary proceedings could not maintain an action under 42 U.S.C. § 1983 but instead were required to file under 28 U.S.C. § 2254); <u>accord</u>, <u>e.g.</u>, <u>Peralta v. Vasquez</u>, 467 F.3d 98, 102 (2d Cir. 2006). Hence, if the prison disciplinary proceeding at issue resulted in the loss of a prisoner's good time credits, thereby extending his incarceration, the challenge to that proceeding as unconstitutional properly would be brought under 28 U.S.C. § 2254. <u>See</u> <u>Walker v. O'Brien</u>, 216 F.3d 626, 632-33 (7th Cir.) (concluding that 28 U.S.C. § 2254 is a state prisoner's exclusive vehicle for challenging a prison disciplinary determination that extends his time in prison),

cert. denied sub nom. Hanks v. Finfrock, 531 U.S. 1029 (2000); see also Cook v. New York State Div. of Parole, 321 F.3d 274, 279 (2d Cir. 2003) (in a habeas petition challenging parole revocation, reaching a "similar conclusion" as the Seventh Circuit in Walker).

However, because Petitioner is serving a sentence with a maximum term of life in prison, he is not eligible to earn good time credit. See N.Y. CORR. LAW § 803(1)(a) ("Every [inmate] . . . except a person serving a sentence with a maximum term of life imprisonment, may receive time allowance against the term or maximum term of his . . . sentence imposed by the court."); Livingston v. Piskor, No. 04-6027, 153 Fed. Appx. 769, 770 (2d Cir. 2005) (unpublished opn.); Bressette v. Travis, 240 A.D.2d 828, 828 (3d Dept. 1997). Thus, the hearing officer's recommendation of the loss of good time credit, although upheld on appeal, essentially was meaningless. See Gomez v. Kaplan, No. 94 Civ. 3292, 2000 WL 1458804, at *12 (S.D.N.Y. Sept. 29, 2000) ("Since Gomez is serving a sentence with a maximum term of life, he may not receive time allowance against the term of his sentence. Accordingly, the deprivation of good-time credit in Gomez' case is meaningless. The Defendants cannot take from Plaintiff something Plaintiff does not have.").

There is nothing to suggest that Petitioner may later become eligible for good time credit such that the length of his sentence could be affected by the hearing officer's recommended loss of the

credit. His conviction for first degree assault, to which he was sentenced to an indeterminate prison term of sixteen years to life, has been affirmed on appeal. <u>People v. Parra</u>, 262 A.D.2d 170 (1st Dept.), <u>lv. denied</u>, 93 N.Y.2d 1024 (1999). Parra has not raised any challenge to the underlying conviction or sentence in the petition before this Court, and he does not have any pending state court action challenging this conviction or sentence. Thus, to the extent he attacks the recommendation by the hearing officer that he lose good time credits, that claim is not properly brought in a § 2254 habeas proceeding. <u>See Gomez</u>, 2000 WL 2000 WL 1458804, at *12 ("Gomez has not been resentenced. He was and still is ineligible to receive time allowance against his sentence. Accordingly, the length of his sentence is wholly unaffected by this action. Neither party has suggested any reason nor is there any indication that Gomez will be resentenced. Therefore, it would be entirely inappropriate to treat Plaintiff's claim as one attacking the fact or length of his confinement merely because it is conceivable, albeit a remote possibility, that he could be resentenced and the length of that as yet nonexistent sentence might be affected.").

**C. The other penalties imposed as the result of the disciplinary hearing, because they affect Petitioner's conditions of confinement, may not be challenged in a 28 U.S.C. § 2254 proceeding.**

As was the case in <u>Gomez</u>, the length of Parra's confinement is not and cannot be implicated by the outcome of this action. In other words, "[w]hether Plaintiff prevails or loses, the length of

his sentence is fixed." <u>Gomez</u>, 2000 WL 1458804, at *12. Thus, Parra's lawsuit "becomes a pure conditions of confinement case by default[,]" <u>id.</u>, meaning that it is actionable, if at all, under 42 U.S.C. § 1983. <u>See</u> <u>Peralta v. Vasquez</u>, 467 F.3d at 100 ("[I]n 'mixed sanctions' cases [i.e., one involving a single disciplinary proceeding that gave rise to two types of sanctions-one that affected the duration of his custody and the other that affected the conditions of his confinement], a prisoner can, without demonstrating that the challenged disciplinary proceedings or resulting punishments have been invalidated, proceed separately with a § 1983 action aimed at the sanctions or procedures that affected the conditions of his confinement. . . ."); <u>Jenkins v. Haubert</u>, 179 F.3d 19, 27 (2d Cir. 1999) ("[W]e hold that a § 1983 suit by a prisoner, such as Jenkins, challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by <u>Heck</u> [v. Humphrey, 512 U.S. 477 (1994)] and <u>Edwards</u> [v. Balisok, 520 U.S. 641 (1997)].").

Considering Parra's claims under the rubric of 42 U.S.C. § 1983 does not entitle him to relief. The Court assumes, without deciding, that Parra had a protected liberty interest in being free from the punishment imposed upon him as a result of the disciplinary hearing. <u>See</u> <u>Green v. Bauvi</u>, 46 F.3d 189, 194 (2d Cir. 1995) ("The two threshold questions in any § 1983 claim for denial

-9-

of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest.") (citations omitted)

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that prisoners retain certain liberty interests which may not be deprived without due process of law. 418 U.S. at 556. Thus, an inmate facing the loss of such a protected liberty interest is entitled, at a minimum, to receive advance written notice of the charges against him and of the evidence available to the factfinder. Id. at 563-64. The purpose of this notice is to give the inmate an opportunity to marshal the facts and prepare his defense. Id. at 564. Due process further requires that a written record of the proceedings be kept, along with a written statement by the factfinder as to the evidence relied upon and reasons for the disciplinary action imposed. Id. In addition, the inmate is entitled to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566; see also McCann v. Coughlin, 698 F.2d 112, 122 (2d Cir. 1983).

### 1. False Testimony by the Official Witnesses and Bias on the Part of the Hearing Officer (Claim 1(a))

Petitioner's claim of witness perjury pertains to the testimony offered by the two corrections officers who frisked his

-10-

cell and discovered the weapon. CO Ouimette testified that while he and CO Pfleuger were frisking Petitioner's cell, they found what appeared to be new packaging tape affixed to a wall near the toilet. CO Ouimette removed the tape, and underneath he found toothpaste with paint over it. When he removed the toothpaste and paint, he saw an object in the space between the cell and the back of the catwalk. CO Ouimette then went out to the catwalk behind the cell, pushed the weapon through to the inside of the cell, and CO Pfleuger retrieved it. T.14-16, 22-25.[5] The weapon was about eight inches long, looked like a cell mirror, and came to a sharp point on the top. T.14-16.

CO Pfleuger testified that he was searching Petitioner's cell with CO Ouimette, and that during the search, CO Ouimette started probing the area behind the toilet. After CO Ouimette removed the tissue and paint, CO Pfleuger could hear the object in question rattling about in the space. CO Ouimette went to the back of the cell and pushed the object through the hole, and CO Pfleuger grabbed it. T.33-35.

Petitioner asserted that CO Ouimette's initial testimony was inconsistent with how he actually retrieved the weapon, noting that CO Ouimette had not mentioned going to the catwalk until Petitioner

---

[5]

Numerals preceded by "T.__" refer to the transcript of Parra's disciplinary hearing, reproduced in the record as an attachment to the Petition (Dkt. #1) as an attachment (Dkt. #7-1) to Respondent's Response (Dkt. #7) to the Petition.

asked him about it. T.25-26. Petitioner also contended that CO Pfleuger framed him because he "got it out for [him]." T.27. Petitioner insisted that the testimony of CO Ouimette and CO Pfleuger was fabricated, and that they could not have retrieved the weapon in the manner in which they described, based upon the size of the hole and the size and shape of the weapon. T.45-46, 47-50.

As the Second Circuit has explained, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), reh'g denied, 826 F.2d 194 (2d Cir. 1987). "This principle extends as well to false testimony by corrections personnel at prison disciplinary hearings." Thomas v. Calero, 824 F. Supp.2d 488, 499 (S.D.N.Y. 2011) (citing Mitchell v. Senkowski, No. 04-1792, 158 Fed. Appx. 346, 349, 2005 WL 3429422, at **2 (2d Cir. Dec. 14, 2005) (unpublished opn.)).

Although a prison inmate has the right not to be deprived of a protected liberty interest without due process of law, Freeman, 808 F.2d at 951, the provision of false testimony against an inmate by a corrections officer violates due process "only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, see Freeman v. Rideout, 808 F.2d [at] 952 . . . , or where the fabrication of evidence was motivated by a desire to retaliate for

the inmate's exercise of his substantive constitutional rights, see Franco v. Kelly, 854 F.2d 584, 588-89 (2d Cir.1988)." Mitchell, 158 Fed. Appx. at 349, 2005 WL 3429422, at **2 (citing Grillo v. Coughlin, 31 F.3d 53, 56-57 (2d Cir. 1994)).

Here, Parra has not alleged that he was denied any required procedural safeguard. Indeed, Parra stated at the end of the hearing that he had no procedural objections and that he felt that the hearing officer "did the best [he] could under the circumstances." T.51. After reviewing the entire disciplinary hearing transcript, this Court is satisfied that the hearing was conducted fairly and that the hearing officer took pains to ensure that Parra's defense was heard.

Furthermore, Parra has not alleged that CO Pfleuger was motivated by a desire to retaliate against him for exercising his constitutional rights. Although he felt that CO Pfleuger was harassing him, Petitioner had never filed a grievance against him. T.45. The record is devoid of any showing of retaliatory animus on the part of CO Pfleuger, CO Ouimette, or any of the corrections facility staff involved in this incident.

Parra's related contention that the hearing officer was biased in favor of the corrections officers is unfounded, especially in light of Parra's statements that he was satisfied with how the hearing officer conducted the proceedings. Furthermore, the hearing officer did not simply rely on the corrections officers' testimony

and instead personally inspected the cell and the back of the catwalk. He explained on the record that CO Pfleuger had accompanied him and explained the cell frisk in detail. T.47-48. In sum, Petitioner has not established either perjury by the corrections officers or bias on the part of the hearing officer.

### 2. Denial of Right to Call Inmate Witnesses (Claim 1(b)

All of inmate witnesses whom Parra wished to call refused to testify, according to Parra's inmate legal assistant. At the hearing, Parra stated that he did not believe the legal assistant. T.5. Nevertheless, he "signed off", agreeing that his assistant had helped him in a satisfactory manner. Parra did not raise any further objections to the inmate witnesses not appearing to testify.

District courts in this Circuit have rejected claims by an inmate that his due process rights were violated when a hearing officer failed to speak with two inmate witnesses personally to inquire into their reasons for refusing to testify at the plaintiff's hearing. See Shell v. Brzezniak, 365 F. Supp.2d 362, 377 (W.D.N.Y. 2005) ("Totten [the hearing officer] had no authority to compel the inmate witnesses' testimony. Totten, who put these reasons on the record at the hearing, was not required to make any further inquiry.") (citing Brown v. Selsky, No. 93-CV-0268E(H), 1995 WL 13263, at *6 (W.D.N.Y. Jan. 11, 1995) ("[B]ecause such inmates refused to testify and could not be compelled to do so, and

-14-

in that the plaintiff was given documentation stating same, to require more of the defendants would be futile and wasteful.")); see also Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (noting that if a "witness will not testify if called, then it cannot be a 'necessity' to call him"). Here, the hearing officer did not rely on hearsay statements of the corrections officers involved in the incident, but instead relied on representations made by Parra's legal assistant, who had talked to the witnesses. Parra has offered no basis for concluding that the legal assistant had a motive to lie or any interest in preventing these witnesses from testifying at Parra's hearing. In sum, the Court can discern no due process violation in this regard.

### 3. Failure of Hearing Officer to Adhere to NYSDOCCS Rules and Regulations (Claim 2(a)) and Errors by State Court in Processing His Cases (Claims 1(c) and 3(a))

Parra contends that the Clerk of the New York State Court of Appeals violated his due process rights. Apparently, the Clerk stated that his leave application was fashioned incorrectly and indicated that she would convert it to the appropriate motion. Petitioner asserts that she clearly must have failed to do so, since the Court of Appeals denied leave to hear his appeal. Petitioner also contends that the Albany County Supreme Court erred in transferring his Article 78 proceeding to the Third Department for adjudication. Lastly, Petitioner contends that the hearing officer did not follow applicable rules and regulations promulgated

by NYSDOCCS because CO Pfleuger, who had direct knowledge of the incident, did not sign the misbehavior report.

It bears noting that "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990). Petitioner at most has alleged violations of state statutory or administrative law. Assuming such violations occurred, which the Court does not find to be the case, Parra has offered no legal authority for the proposition that they rise to the level of a federal constitutional violation. As such, they cannot support a cause of action under 42 U.S.C. § 1983. Lamar Advertising of Penn, LLC v. Pitman, 573 F. Supp.2d 700, 706 (N.D.N.Y. 2008) (citing Beecher v. Department of Consumer Protection, No. 06-4852-cv, 274 Fed. Appx. 88, 89-90, 2008 WL 1817260, at **1 (2d Cir. Apr. 23, 2008) (unpublished opn.) (stating that the alleged violations of state-mandated procedures do not amount to a procedural due process violation) (citation omitted); Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir. 1994) (stating that "a common law tort is not cognizable under section 1983 unless it also results in a violation of federal constitutional or statutory law") (citation omitted)).

## III. Conclusion

For the foregoing reasons, the petition filed by Edwin Parra (Dkt. #1) is dismissed. Because Parra has failed to make a substantial showing of a denial of a constitutional right, the

Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           July 27, 2012

-17-